**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
---
UNITED STATES OF AMERICA,

          v.

WILLIAM R. NOJAY,
---

DECISION & ORDER

16-mj-600

### Relevant Facts

On September 8, 2016, the Court found probable cause and approved the filing of a criminal complaint against William R. Nojay (hereinafter "Nojay" or "defendant"). The complaint charged Nojay with wire fraud in violation of 18 U.S.C. § 1343. According to the allegations set forth in the complaint, Nojay was alleged to have improperly diverted and embezzled approximately $800,000 of client funds that had been deposited in an attorney trust account at HSBC Bank in Rochester, New York.

At the request of the government, the Court issued a summons to be served on Nojay, requiring him to appear in federal court before the undersigned on September 9, 2016 at 9:00 a.m. for an Initial Appearance pursuant to Rule 5 of the Federal Rules of Criminal Procedure. In addition to issuing the summons and complaint, the Court also granted the government's request to order the complaint sealed. The sealing order, drafted by the government, directed that the criminal complaint

1

"remain sealed until such time as all [sic] defendant named in the complaint is brought before this court for an initial appearance, or until further order of the Court, but in any event, no later than six months from today's date, unless before that time further application is made and the Court extends the time for sealing." Docket # 2.

On September 9, 2016, government counsel and counsel for Nojay appeared in federal court at 9:00 a.m., but the defendant did not appear as directed. According to the government, at approximately 9:20 a.m. the defendant committed suicide. Shortly thereafter the Court was informed of the defendant's death. Later that afternoon, the government filed a motion to unseal the criminal complaint against Nojay. See Docket # 4. Counsel for the defendant has opposed unsealing the complaint and the matter has now been fully briefed.

## DISCUSSION

Public Right to Access Judicial Documents: "The notion that the public should have access to the proceedings and documents of courts is integral to our system of government." United States v. Erie County, 763 F.3d 235, 238-39 (2d Cir. 2014). Accordingly, there exists both a common law and a First Amendment right of access to judicial documents.

The common law right of public access requires the Court to first determine whether the document at issue is "a judicial document." Id. If it is, then there is a presumption of public access[1] that can be overcome if outweighed by countervailing factors. See United States v. Graham, 257 F.3d 143, 149-55 (2d Cir. 2001) (while it is beyond dispute that common law right of public access exists, it is "equally clear" that the right is "'not absolute.'" (quoting Nixon v. Warner Commc'ns, 435 U.S. 589, 598 (1978)). "[C]ountervailing factors include, but are not limited to 'the danger of impairing judicial efficiency' and 'the privacy interests of those resisting disclosure.'" Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 120 (2d Cir. 2006) (quoting Amodeo II, 71 F.3d at 1050).

"In addition to the common law right of access, it is well established that the public and the press have a 'qualified First Amendment right to attend judicial proceedings and to access certain judicial documents.'" Lugosch, 435 F.3d at 120 (citing Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 91 (2d Cir. 2004)). "Indeed, the First Amendment protection has been understood to be stronger than its common law ancestor and

---

[1] The weight the Court assigns the presumption of access in any particular case is "governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." United States v. Amodeo, 71 F.3d 1044, 1049 (2d Cir. 1995) ("Amodeo II").

counterpart." Erie County, 763 F.3d at 239. In analyzing the First Amendment right to public access, the Second Circuit has looked to whether "experience" and "logic" support "making the document available to the public." Id. The First Amendment analysis requires the Court to "consider (a) whether the documents 'have historically been open to the press and general public' (experience) and (b) whether 'public access plays a significant positive role in the functioning of the particular process in question' (logic)." Id. (quoting Lugosch, 435 F.3d at 120) (parentheticals in original). Once the Court determines that a First Amendment right of access attaches to a document, it may be sealed only "if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." In re New York Times, 828 F.2d 110, 116 (2d Cir. 1987) (internal citations and quotation marks omitted).

Whether grounded in the common law or the First Amendment, the public's right of access to judicial documents and proceedings is not absolute. "Though the public's right of access to such materials is vibrant, it is not unfettered. Important countervailing interests can, in given instances, overwhelm the usual presumption and defeat access." Siedle v. Putnam Inv., Inc., 147 F.3d 7, 10 (1st Cir. 1998). Accordingly, "the decision as to access is one best left to the sound

4

discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." Nixon, 435 U.S. at 599. The burden to demonstrate the continued need for sealing is on the party opposing public access. Pascal Abidor, Nat'l Ass'n of Criminal Def. Lawyers v. Johnson, No. 10-CV-4059 (ERK), 2016 WL 3102017, at *4 (E.D.N.Y. June 2, 2016) (citing Gambale v. Deutsche Bank AG, 377 F.3d 133, 142 (2d Cir. 2004)).

The Positions of the Parties: The government's position is straightforward and unbending. Counsel for the government asserts that a criminal complaint "is the central judicial document in a criminal proceeding" and thus by definition is a judicial document presumptively entitled to public inspection under either the common law or the First Amendment. Government's Reply Br. (Docket # 7), at 3. The government expected the defendant to appear for court on September 9, and intended to ask the Court to unseal the complaint prior to proceeding with the Initial Appearance. The defendant's suicide, the government argues, does not alter or diminish the presumptive right of public access to a document that historically has been available to the press and the public. The government contends that because "[a] living defendant has no right to conceal the existence of criminal charges" then "[l]ogically, a deceased defendant has no right to conceal the

fact of criminal charges." Id. The government goes so far as to claim that permitting the complaint to remain sealed would, in effect, grant an undeserved benefit to a defendant who takes his or her own life to avoid the publicity resulting from being formally charged with a crime. "Encouraging suicide as an option for hiding the fact of a criminal charge is not a 'higher value'[2] that this Court should preserve." Government's Reply Br. to Suppl. Opp'n (Docket # 9), at 1. Finally, the government argues that the fact that the defendant was a public figure makes public access to the complaint particularly important because of "speculation" about "alleged criminal misconduct by Nojay." Government's Mot. to Unseal (Docket # 4), at 2. "There is clearly a significant public interest in the fact of this proceeding, and the public has the right to know about it." Id. "The simple truth is that the United States of America charged William Nojay, at the time a public figure, with wire fraud." Government's Reply Br. (Docket # 7), at 4.

Counsel for defendant and his family view the circumstances quite differently and object to any unsealing of the criminal complaint. Defense counsel does not dispute that the criminal

---

[2] In its Reply Brief (Docket # 7) the government relied on ABC, Inc. v. Stewart, 360 F.3d 90 (2d Cir. 2004) for the proposition that the "presumption of openness" with respect to judicial records can be overcome only by a judicial finding that continued sealing "is essential to preserve higher values." Id. at 98 (quoting Press Enterprise Co. v. Superior Court, 464 U.S. 501, 510 (1984)).

6

complaint is a judicial document, but argues that the government's stated purpose for unsealing - so that the charges can be formally dismissed - is legally without merit. Relying on the doctrine of abatement,[3] defense counsel argues that the prosecution ended and dismissal of the action against Nojay was automatic upon his death. "[A]s a result of Mr. Nojay's death, no prosecution remains; the complaint that the United States Attorney seeks to unseal no longer exists; Mr. Nojay's death resulted in the dismissal of the action." Def.'s Opp'n to Mot. to Unseal Compl. (Docket # 6), at ¶ 3.

According to defense counsel "[t]here is no legitimate purpose" for allowing public access to the complaint given the defendant's death. Id. at ¶ 4. "[T]he presumption of innocence applies and cannot ever be defeated, since the case can never be tried, and [the] finder of fact can never find proof beyond a reasonable doubt now of what are merely unproven allegations." Id. Defense counsel describes the government's argument that a court should not permit a deceased defendant to keep criminal charges sealed when a living defendant has no such right as a "false syllogism." Def.'s Suppl. Opp'n to Mot. to Unseal (Docket # 8), at ¶ 12. Unlike his client, defense counsel

---

[3] The principle of abatement applies when "a convicted defendant dies while his direct appeal as of right is pending." United States v. Wright, 160 F.3d 905, 908 (2d Cir. 1998). Because Nojay was never convicted, the doctrine of abatement is inapplicable.

7

argues, a living defendant "has the right to enter a plea of not guilty, put the government to its proof, and testify or otherwise present exculpatory or mitigatory proof." Id. at ¶ 12.

Balancing the Competing Interests: While the parties do not dispute the legal principles governing public access to judicial documents, they stand in opposite corners as to what those legal principles require in the unusual and undeniably shocking circumstances presented here. Put simply, the issue presented is whether the public has a right of access to a sealed criminal complaint filed against a defendant who commits suicide before he ever appears in court and neither the defendant nor his lawyer have ever seen the charges. None of the experienced lawyers in this case, or counsel in the related action filed by the Democrat and Chronicle,[4] has located a case with similar facts. Neither has the Court. There is no question that a criminal complaint that confirms a judicial probable cause finding that an individual committed a federal criminal offense is a judicial document that is entitled to a weighty presumption of public access. See United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995) ("Amodeo I") (a "judicial document" is one that is "relevant to the performance of the judicial function and useful in the judicial process"). But the presumption of public access does not end the analysis –

---

[4] 6:16-mc-6008.

8

once the presumption is found to exist, "a court must balance competing considerations against it." Amodeo II, 71 F.3d at 1050. As set forth above, counsel representing the interests of Nojay and his family and counsel for the government both make strong arguments that the balance of competing interests tips strongly in their favor.

It is apparent that the countervailing interest counsel for Nojay leans most heavily on is the privacy of the defendant and his family. Counsel reminds the government and this Court that his client is dead, the criminal prosecution no longer exists, and the circumstances surrounding his client's suicide are intensely private and do not implicate matters of public concern. Moreover, because of the defendant's death, the truth of the charges will never be determined and the defendant, presumed innocent, will not be able to publicly defend himself.

These are not insubstantial countervailing interests. "When considering an assertion of a right to privacy, a court should look to the extent to which the subject matter is traditionally considered private, the sensitivity of the information at issue, the intended use of the information, the reliability of the information, and the extent to which the party would have a fair opportunity to respond to accusations contained in the material." Pascal Abidor, 2016 WL 3102017, at *5. And, albeit in varying contexts and circumstances, courts

have "declined to allow public access simply to cater to a morbid craving for that which is sensational and impure." Amodeo II, 71 F.3d at 1051 (citing another source). Similarly, the "fact that a case is high profile in nature does not necessarily justify public access." In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D), 707 F.3d 283, 294 (4th Cir. 2013). Nevertheless, "[t]he mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." Kamakana v. City & Cty. of Honolulu, 447 F.3d 1172, 1179 (9th Cir. 2006); see Siedle, 147 F.3d at 10 ("The mere fact that judicial records may reveal potentially embarrassing information is not in itself sufficient reason to block public access.").

But the foregoing analysis only serves to pay tribute to the difficulty inherent in weighing the competing interests in this unusual and tragic case. What tips the balance in favor of unsealing the complaint is the indisputable fact that the defendant's interest in privacy has already been denied, and continued sealing of the complaint will not further that

interest. For, as this Court noted in its sealed[5] November 7, 2016 Decision and Order:

> [E]ven though the criminal complaint was sealed, within a few hours of the defendant's suicide virtually every essential fact alleged in the criminal complaint was reported in the press, including the nature and genesis of the charges, specific facts about the government's investigation of the defendant, and the date and time of the defendant's scheduled appearance before this Court. Compare Docket # 1 with Gary Craig & Steve Orr, Assemblyman Bill Nojay faced federal fraud charge, Democrat & Chron., Sept. 10, 2016, http://www.democratandchronicle.com/story/news/2016/09/09/nojay-faced-federal-fraud-charge/90140496/. The newspaper article relies on "sources familiar with the case" as providing the information that was also contained in the sealed complaint. While the identity of the well-informed sources "familiar with the case" remain unknown, the same cannot be said as to the circumstances surrounding Mr. Nojay's suicide, including investigative details of the government's case against him and the fact that Nojay took his own life the same morning he was scheduled to appear in federal court on charges that he embezzled money from a trust account.

Decision & Order, United States v. Nojay, No. 16-mj-600-JWF (W.D.N.Y. Nov. 7, 2016), ECF No. 13, at *3-4.

The fact that the public already has access to the information contained in the sealed criminal complaint significantly diminishes the potency of the defendant's privacy arguments. See, e.g., In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D), 707 F.3d at 293 (a factor to be considered in balancing the public's right to access against a

---

[5] In addition to unsealing the criminal complaint in this matter, the Court will also be unsealing its November 7, 2016 Decision and Order (Docket # 13).

party seeking sealing is "whether the public has already had access to the information contained in the records" (quoting another source)); Mann v. Boatright, 477 F.3d 1140, 1149 (10th Cir. 2007) (fact that much of the information in a complaint has been previously disclosed undermines any privacy concerns); Application of The Herald Co., 734 F.2d 93, 101 (2d Cir. 1984) (no sealing of courtroom necessary where the "information sought to be kept confidential has already been given sufficient public exposure to preclude a closure order on this account"); United States v. James, 663 F. Supp. 2d 1018, 1021 (W.D. Wash. 2009) ("[b]ecause that information is publicly available, no purpose would be served" by continued sealing); United States v. Leonardo, 129 F. Supp. 2d 240, 245 (W.D.N.Y. 2001) (no need to seal courtroom where disputed evidence has "been and no doubt will continue to be widely reported in both the print and broadcast media"), aff'd., United States v. Graham, 257 F.3d 143 (2d Cir. 2001). The Court cannot preserve privacy rights that have already been compromised.

In the final analysis, the burden is on the defendant to show the need for continued sealing. Based on the present record, it is clear to this Court that defendant can sustain no harm from allowing public access to the complaint that would be different than or beyond the harm already sustained from existing media accounts of the suicide and pending criminal

charges. Accordingly, I find the balance of competing interests does not favor preventing public access to the criminal complaint and the government's motion to unseal the complaint must be granted.[6]

Motion to Unseal Other Judicial Documents: While the government's original motion sought to unseal only the criminal complaint, its most recent submission seeks to allow public access to all "the judicial records in this case, including but not limited [to] the seal[ed] complaint." See Government's "Motion for a Decision" (Docket # 12), at 2 (emphasis added).

With one exception, the government's motion is granted. The exception concerns pages two through six (Point "2") of the Government's "Reply to Supplemental Opposition to Motion to Unseal Complaint" (Docket # 9). In this section, the government provides a detailed factual chronology of their investigation. This investigative "chronology" has no relevance to either the common law or First Amendment right of access to judicial documents. As best the Court can discern, the chronology was set forth because the government felt it necessary to respond to what government counsel perceived to be a "personal attack" on the United States Attorney made by defense counsel.

---

[6] This determination is premised on the assumption that neither the government nor its agents were responsible for deliberately leaking to the press the existence or the contents of the sealed complaint. If the government is aware of information contrary to this assumption, it should notify the Court forthwith.

13

The Court is concerned that in its Reply Brief the government has exponentially expanded both the volume and nature of the facts that were originally at issue in this proceeding. Indeed, the government's Reply contains factual allegations that are unrelated to the government's original motion to unseal and describes events, conversations and facts that were never included or considered by the Court in issuing the complaint. More problematic however, is that this section of the government's submission describes statements the defendant and his attorney allegedly made to law enforcement and specifies investigative and prosecutorial procedures that are not only totally irrelevant to the Court's analysis as to whether the complaint should be unsealed, but reveal information that would clearly be legally inadmissible in any court proceeding involving the defendant.

The *only* issue properly presented to this Court is whether the common law or First Amendment right of access to judicial documents requires unsealing the criminal complaint filed against William Nojay. Any dispute over whether there has been a "personal attack" on the motives of the United States Attorney by defense counsel is entirely a creation of the lawyers and their briefing. Such a dispute does not present a substantive issue the Court needs or intends to address. Moreover, permitting an intramural squabble among lawyers to expand the

breadth of this dispute to include public disclosure of facts and events completely extraneous and irrelevant to the Court's analysis would be unwise and certainly not necessary to preserve the importance of the public's right of access to judicial documents.

## Conclusion

For the reasons set forth above, the Court (1) **grants** the government's motion (Docket # 4) to unseal the criminal complaint[7] (Docket # 1) and (2) **grants** the government's request as set forth in Docket # 12 to unseal all other documents filed in case number 16-MJ-600(JWF), including this Decision and Order, except that the following portion of Docket # 9 shall remain sealed: page two after the point "2" heading through page six and ending with the word "information" as found at the end of the first paragraph on page six.[8]

---

[7] On September 19, 2016, the Democrat & Chronicle Newspaper ("D&C") moved to intervene in this action for the purpose of unsealing the criminal complaint. See 6:16-mc-6008, Docket # 2. Similar to the government, counsel for the D&C argued that the criminal complaint was a judicial record to which they and the public have common law and First Amendment rights of access. Because this Decision and Order grants all the relief requested by the D&C, a separate Order will soon be issued in that action simply confirming the unsealing of the criminal complaint.

[8] Unless an appeal is filed, counsel for the government shall submit a proposed redacted copy of Docket # 9 to the Court for review and approval no later than 5:00 p.m. on November 21, 2016.

It is further Ordered that any unsealing granted by this Decision and Order shall be stayed until 5:00 p.m. on Monday, November 21, 2016, so as to allow counsel for the defendant or the government to seek review of this Decision and Order by a United States District Court Judge. Should an appeal be timely filed, the complaint and all other documents shall remain sealed until the appeal is decided or until further Order of the Court deciding the appeal.

**SO ORDERED.**

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: November 17, 2016
Rochester, New York